Michael Ronald SWEET, Appellant,

v.

UNITED STATES, Appellee.

Thurston SWEET, Appellant,

v.

UNITED STATES, Appellee.

Nos. 79–438, 79–727.

District of Columbia Court of Appeals.

Argued Sept. 17, 1981.

Decided Dec. 2, 1981.

Andrew L. Lipps, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on the brief, for appellant Michael Ronald Sweet.

Thomas William Ullrich, Washington, D. C., appointed by this court, for appellant Thurston Sweet.

Diane G. Clarke, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, and Edward D. Ross, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, HARRIS * and BELSON, Associate Judges.

* Associate Judge HARRIS did not participate in the disposition of this appeal.

KERN, Associate Judge:

Following a jury trial, appellants were found guilty of kidnapping, D.C. Code 1973, § 22–2101; armed robbery, D.C. Code 1973, §§ 22–2901, –3202; assault with intent to commit rape, D.C. Code 1973, § 22–502; and various related offenses arising from the abduction of a woman. On appeal, appellants challenge the trial court's denial of their motions to sever the trial of the codefendants. We find that the trial judge did not abuse his discretion and therefore we affirm.

I

The abduction occurred on the afternoon of July 26, 1977. At approximately 1:30 p. m., the complainant, who was walking with her two-year-old daughter along Eastern Avenue in Northeast Washington, was approached by two men in an automobile. After the driver asked her for directions, the other man emerged from the car and forced her and her child at gunpoint into the back seat. The men asked about her family and drove through the neighborhood where her father lived.

Without instructions from the gunman, the driver took them to a house in Northeast Washington. He left the car momentarily and returned to assure the gunman that everything was all right. The men took the complainant into a bedroom in the house, where they discussed the amount of ransom money and the complainant's child. Again leaving complainant and the gunman alone, the driver checked to make sure that no one was in the house before they left. Allowing the mother to accompany them, the two men took the child to her family's neighborhood. There the driver told a teenage boy, Mark Ballard, to take the child to her grandfather's house.

The driver, the gunman, and the complainant then returned to the same bedroom. While the driver stood by the locked door and watched, the gunman ordered the complainant to take off her clothes, looked through her wallet and took her jewelry. After a brief conference between the two men, the driver took the gun and left the room. During his absence, the gunman attempted to force the complainant to have sexual relations with him. Holding a BB gun, which the complainant thought was a rifle, he threatened to shoot her. The driver eventually reentered the room after knocking and told the gunman that he needed money for gas. When the complainant asked the driver to help her, he smiled and said that he would be back. Alone with her again, the gunman attempted once more to sexually assault her. During their struggle she noticed a scar on his right arm.

When the driver returned, the two men again discussed the ransom money. The driver suggested that they demand $20,000, but the gunman felt that $10,000 was sufficient. At approximately 3:45 p. m., the gunman called the complainant's father and demanded the ransom. After the call, the complainant was allowed to visit the bathroom, but was under the constant vigil of the driver.

The abductors then drove to another house in Northeast Washington. The driver, who was in possession of the BB rifle, told the complainant to put his shirt and hat on so that no one would recognize her on the drive. Both men tied her to a bed in the house and gagged her. The driver told her that he would not leave her tied up too long, if she had sexual relations with him. The gunman slapped her, and the driver, loading the BB rifle, said that he was "going to get this tonight." The gunman left the room for approximately five minutes and returned with water and cereal. At the gunman's direction, the driver gave the complainant some water. The gunman mentioned bringing a third man into the venture and both men left the house.

Approximately five minutes later, at 5:55 p. m., the complainant partially untied herself and ran upstairs to the room of Jenny Cooper and Jerome Lockhart, who called the police. The officer arrived and waited for the men to return. Meanwhile, at approximately 6:15 p. m., Officer MacArthur Rodgers stopped a car containing three men near this area for a registration check. He identified the driver as appellant Thurston

Sweet. Ten minutes later, when the car driven by the kidnappers returned to the Northeast house, a chase ensued. Observed by Jenny Cooper and Jerome Lockhart, the gunman jumped from the car; they shortly thereafter identified this man as appellant Michael Sweet, whose room was on the first floor of the house. Officer Rodgers recognized the license of the kidnapper's vehicle as that of the car he had stopped earlier. Police officers located Thurston Sweet at his father's house and the complainant identified him as the driver. Two days later, she identified Michael Sweet from an array of nine photographs and in September of 1977 picked him out of a lineup.

Appellants Thurston Sweet and Michael Sweet were tried jointly. The government's case against both defendants was based primarily upon the testimony of the complainant. Among other government witnesses were Mark Ballard, who had taken the child to her grandparents at the instruction of the kidnappers and who testified to his identification of Thurston Sweet; and Jenny Cooper and Jerome Lockhart, who testified that they saw Michael Sweet jump out of the kidnapper's car.

At the conclusion of the government's case, Thurston Sweet asserted a defense of coercion. He took the stand and testified to his involvement with Michael Sweet, but claimed that he took part in the act only because he was afraid of Michael. Michael Sweet, to support his defense of alibi, did not take the stand but presented three of his relatives who testified that he was in North Carolina from the end of June until sometime in August. The jury found appellant Michael Sweet guilty as charged. Thurston Sweet was found guilty of all charges except kidnapping while armed, assault with intent to commit rape while armed, and assault with intent to commit sodomy while armed.

## II

Appellants contend that the trial judge erred in denying their motions to sever. Appellant Michael Sweet also asserts error in the denial of his motion for mistrial and severance in the midst of trial. Both appellants maintain that the conflicting nature of their defenses required severance. In addition, Thurston Sweet contends that separate trials were required to prevent a finding of guilt by association, and Michael Sweet contends that there was error in the continuation of the joint trial after admission of testimony regarding a prior conviction. We address each of these contentions separately.

### A.

Appellants maintain that severance of their trials was necessitated by the conflicting and irreconcilable nature of their defenses. The government counters that the trial judge did not abuse its broad discretion because the defenses were not sufficiently incompatible to require severance.

The appellants were properly joined for trial under Super.Ct.Cr.R. 8(b), which provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Properly joined defendants may request severance under Super.Ct.Cr.R. 14, which states the following:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Our review of the refusal to sever is limited to a determination of whether the broad discretion entrusted to the trial court was abused. *Williams v. United States*, D.C.App., 382 A.2d 1 (1978); *Jackson v. United States*, D.C.App., 329 A.2d 782

(1974), *cert. denied,* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975). This court has held that in order to justify reversal, an abuse of discretion must violate a defendant's right to due process and a fair trial. *Cunningham v. United States,* D.C.App., 408 A.2d 1240 (1979); *Jackson v. United States, supra; Smith v. United States,* D.C. App., 315 A.2d 163, *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974).

■ The fact that codefendants rely upon conflicting defenses does not mandate severance. Prejudice from joinder, requiring severance, results when:

> defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. [*Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966).]

Thus, the irreconcilability must be of such a nature that the jury will draw the improper conclusion from the conflict *alone* that *both* defendants are guilty. *Johnson v. United States,* D.C.App., 398 A.2d 354, 368 n.11 (1979); *Williams v. United States,* D.C. App., 382 A.2d 1, 8 (1978).

■ Although the defenses of Thurston and Michael Sweet may be considered contradictory,[1] there was no danger that the jury might conclude from the conflict alone that both defendants committed the offenses charged. The presence of other strongly incriminating evidence as to each appellant[2]—most importantly, the victim's testimony—indicates that the defense of

each codefendant was not solely contradicted by the other's defense. Furthermore, the jury was instructed to consider the evidence individually against each defendant. *See United States v. Hurt,* 155 U.S.App. D.C. 217, 222, 476 F.2d 1164, 1169 (1973).

We find that no prejudice arose here from the joinder due to irreconcilable defenses and we conclude there was no abuse of discretion in the court's denial of severance on this ground.[3]

· B.

■ Appellant Thurston Sweet maintains that severance was required to prevent a finding of guilt by association because of the disparity in weight of evidence against the codefendants. Disparity of evidence may present the risk of prejudice requiring severance, but only where "the evidence of defendant's complicity in the overall criminal venture is *de minimis* when compared to the evidence against his codefendants." *Christian v. United States,* D.C.App., 394 A.2d 1, 21 (1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

The record suggests that Michael Sweet played a somewhat more active role in the kidnapping than Thurston. It was Michael who approached the complainant with a weapon and who initiated the physical assault. The evidence of the defendant's complicity, however, is far from *de minimis.* Testimony of the complainant establishes that Thurston participated in the kidnapping from the beginning. He drove the automobile and first spoke to the victim.

1. We note that this court in *Jennings v. United States,* D.C.App., 431 A.2d 552 (1981), found the defenses of alibi and innocent presence not conflicting or irreconcilable.

2. The record shows that the trial judge was unaware of the details of Thurston Sweet's defense until immediately before that defendant took the stand. In his opening statement, counsel for Thurston referred to the individual who coerced his client as "another person;" it did not become clear that Thurston intended to incriminate Michael until Thurston's counsel proffered this evidence. Thus, at the time that the trial court became fully aware of the nature of the conflict, he was aware of the weight of the government's case and could therefore con-

clude that a jury conclusion of guilt would not have resulted from the defense conflict alone. *See Williams v. United States, supra* at 9.

3. Contrary to the arguments of appellants, *Johnson v. United States, supra,* is not controlling here. In *Johnson,* this court concluded that the trial court had exercised its discretion erroneously by failing to apply the proper standard. While the lower court there "effectively negated the guiding legal principles which constrained its discretionary choice." *Johnson, supra* at 368, the record before us reflects that the trial court applied the legal principles established by *Rhone v. United States, supra.*

During a portion of the afternoon, he was in possession of his codefendant's weapon. He discussed the ransom money with Michael and suggested a higher amount than his codefendant. In addition, Thurston helped to tie up the victim and threatened to assault her sexually. The fact that he kept leaving Michael and then returning, rather than abandoning the criminal enterprise and obtaining aid, indicates his complicity well beyond a *de minimis* role.

■ Even though evidence against one defendant is quantitatively and qualitatively greater than that against the other, severance is not required if the evidence against the other is substantial and compelling. *United States v. Leonard,* 161 U.S. App.D.C. 36, 47, 494 F.2d 955, 966 (1975). The testimony of complainant, as well as that of appellant Thurston Sweet, is substantial and compelling evidence of the active complicity of Thurston in the crime. The jury could "reasonably be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. DeLarosa,* 450 F.2d 1057 (3d Cir. 1971), *cert. denied sub nom., Jones v. United States,* 405 U.S. 957, 92 S.Ct. 1189, 31 L.Ed.2d 236 (1972) (cited in *United States v. Leonard, supra* 161 U.S.App.D.C. at 47, 494 F.2d at 966. The court specifically instructed the jury to determine the guilt or innocence of each by considering only his own conduct and the evidence against him. The fact that the jury did not return a verdict for Thurston on all counts demonstrates that the jury complied with the charge.

■ We conclude that the disparity in evidence as to each codefendant was not so great as to result in a finding of guilt by association.

**C.**

Appellant Michael Sweet contends that denial of his motion for mistrial and severance was error because of the admission of his codefendant's testimony about Michael's prior conviction. Michael made his motion in the midst of trial when Thurston Sweet proffered evidence of his codefendant's past criminal convictions in an effort to support his own defense of coercion. After a hearing outside the presence of the jury, the trial court allowed Thurston to testify to the fact that Michael had told him that he was not going back to jail, finding that this was probative of his alleged fear of Michael.[4] The court specifically disallowed testimony about Michael's juvenile record and the length of his imprisonment. When Thurston testified that Michael had been incarcerated for five years, the court ordered the answer stricken from the record and directed the jury not to consider it. When Thurston testified that he was afraid of Michael because he had been in jail for armed robbery, the court immediately gave the jury an extensive limiting instruction.[5] He repeated similar instructions at the trial's conclusion.

■ This Court has recognized the rule that evidence of other crimes not charged in the indictment is not admissible as part of the case against the defendant. *E.g., Fields v. United States,* D.C.App., 396 A.2d 522 (1978); *Tinsley v. United States,* D.C.App., 368 A.2d 531 (1976). While we have reversed convictions in certain cases where evidence of other crimes had been presented, the inadmissible evidence in those cases was prejudicial and had been purposely in-

---

4. The trial court was unaware of the possibility of testimony about Michael Sweet's prior convictions until counsel for Thurston Sweet proffered this at trial. *See* note 2, *supra.*

5. The court instructed the jury as follows:

Ladies and gentlemen, every bit of this testimony that we have heard since we have returned here from lunch, every bit of this testimony is admitted for the one very, very limited purpose, it is [admitted] not for the truth of the statement contained therein, but simply to show the state of mind that Mr.

Thurston Sweet had at this whole period. This is the only reason.

It is not admitted as against Mr. Michael Sweet, you may not consider this in any manner in the case which is presented here against Mr. Michael Sweet. It is only admitted for the very limited purpose of showing the state of mind of Thurston Sweet alone. Neither the proof of it is conceded, nor is it admitted for any other purpose. [Record at 1155–56.]

troduced by the prosecution in order to incriminate the defendant. *See Fields v. United States, supra; United States v. Carter*, 157 U.S.App.D.C. 149, 482 F.2d 738 (1973). In both *Fields* and *Carter* such prosecutorial behavior was a determinative factor in the court's finding of impermissible prejudice and inadmissibility. Here, the evidence was elicited by counsel for Michael Sweet's codefendant and was not intended to show Michael's guilt but rather Thurston's innocence. The cases cited by appellant regarding the ineffectiveness of limiting instructions are thus not applicable here.

▮▮▮▮ The dispositive question on this appeal is whether the trial court abused its discretion in denying Michael Sweet's motion for mistrial and severance upon the basis of evidence presented by codefendant Thurston Sweet in support of his defense at trial. *See United States v. Johnson*, 610 F.2d 194 (4th Cir. 1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980). In this regard, the essential analysis is to determine what impact this evidence had on defendant Michael Sweet, without respect to the source of the evidence. The trial judge, in the exercise of his broad discretion to grant or deny a severance, is in a "uniquely favorable position to ascertain the effect on the jury of allegedly prejudicial evidence." *United States v. DeLarosa, supra* at 1065–66. Whether error has been committed through the denial of the motion must be determined on the basis of the record in its entirety. *See United States v. Johnson, supra* at 196; *Gezmu v. United States*, D.C. App., 375 A.2d 520, 523 (1977). The record before us discloses that the government solidly proved its case against Michael Sweet

with convincing admissible evidence.[6] When evidence concerning Michael Sweet's criminal record came to the attention of the jury, the trial judge assessed the effect of that evidence on the jury and promptly utilized careful limiting instructions. Viewed in the context of the entire trial, the judge's instructions to the jury, both in the midst of trial and at its conclusion, were sufficient to dissipate any potential prejudice to Michael which may have arisen due to evidence of his prior conviction.

▮▮▮▮ Having found no error in the manner in which the trial court dealt with evidence concerning Michael Sweet's criminal record, we cannot hold that it was an abuse of discretion under all the circumstances for the trial court to deny appellant Michael Sweet's motion for severance and mistrial after the prior imprisonment testimony. As a proper exercise of that discretion, the court's denial of severance was not error. There is no indication in the record that the trial judge was incorrect in deciding that the "interests in judicial economy outweighed the potential prejudice" to appellant Michael Sweet. *Bittle v. United States*, D.C.App., 410 A.2d 1383, 1387 (1980). Appellant must meet his affirmative burden of proving prejudice from denial of a severance motion. *Clark v. United States*, D.C.App., 367 A.2d 158, 160 (1976). As he has not done so, we affirm.

*Affirmed.*

---

6. Although Michael Sweet may urge that the government's case is not this strong because it rests on the testimony of one witness (the victim), we note that the facts surrounding the kidnapping support the reliability of this witness' testimony. The abduction occurred during daylight hours and the victim had the opportunity to view her assailant for more than three hours. She identified Michael Sweet in both a photographic array and a lineup. In court, she was able to identify a scar on Michael's arm. Furthermore, her testimony was not without support; two other witnesses, Jenny Cooper and Jerome Lockhart, reported seeing Michael flee from the kidnapper's car.