Cornell **TILLMAN**, Appellant,

v.

**UNITED STATES**, Appellee.

Larry **TILLMAN**, Appellant,

v.

**UNITED STATES**, Appellee.

Louis Larry **BELL**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 85–106, 85–117 and 85–217.

District of Columbia Court of Appeals.

Argued Oct. 8, 1986.
Decided Dec. 31, 1986.

---

John Hogrogian, Washington, D.C., appointed by the court, for appellant Cornell Tillman.

Edward Rosenthal, with whom Joan Gauche, Washington, D.C., was on the brief, for appellant Larry Tillman.

Richard S. Greenlee, Public Defender Service, with whom James Klein and Jennifer P. Lyman, Public Defender Service, Washington, D.C., were on the brief, for appellant Bell.

Saul M. Pilchen, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

NEWMAN, Associate Judge:

After a jury trial, Cornell Tillman, Larry Tillman and Louis Bell were convicted of armed robbery and assault with intent to kill while armed. Larry Tillman was, in addition, convicted of carrying a pistol without a license. On appeal, they claim that the trial court erred in denying their motions to sever on the ground that their defenses were irreconcilable. We affirm.[1]

---

1. Likewise, we find no merit to the other claims of error. Larry Tillman's contention that there was insufficient evidence to support his conviction for carrying a pistol without a license is

## I

The government's evidence showed that on March 22, 1984, Larry Tillman, assisted by Cornell Tillman and Louis Bell, robbed and shot Donald Lewis in a parking lot in Southeast Washington. Lewis, the complainant and the government's primary witness, testified that he was first accosted by Larry Tilman while walking to a 7–11 store on Carrollsburg Place, S.W. Tillman asked Lewis "where Harvey was at"; Lewis replied that he didn't know. Tillman then told Lewis that what he was going to do to him was "going to be his revenge." He grabbed Lewis by the neck, pulled out a gun, and, after demanding money, forced him at gunpoint to the rear of a nearby liquor store. There Cornell Tillman and Louis Bell were waiting, Cornell Tillman sitting in the front seat of his own car, Louis Bell leaning on the trunk. According to complainant Lewis, as he and Larry Tillman arrived, Cornell Tillman and Louis Bell "moved together" and "got sort of in position." Louis Bell, unarmed, took a few steps forward and stopped. Cornell Tillman got out of the car with a pistol in his hand, and went to keep an eye around the corner of the store to see if anyone was coming.

Larry Tillman forced Lewis up against the wall of the building. He ordered Lewis to empty his pockets, then to remove all of his clothing. During these events, Louis Bell, according to Lewis' description, stood "like a lookout ... [H]e was just standing there looking left, looking right and just watching what was happening between me and Larry." When he was not looking left and right, Bell stared straight at Lewis. At no time did he attempt to prevent the robbery or offer Lewis any assistance.

As Lewis was removing his socks, he heard two shots coming from Larry Tillman's direction. He began to run. He immediately heard a third shot, and felt a bullet go through his hand. He ran across the street to a gas station, not realizing that the first two shots had hit him in the head. The gas station cashier called the police, who arrived shortly thereafter, along with an ambulance. Lewis told the police he had been robbed by Larry and Cornell Tillman. Before Lewis was taken to the hospital, Louis Bell, who had been picked up by the police while running away from the scene of the crime, was brought to the ambulance, where Lewis identified him as one of the robbers.

Donald Lewis' account of his initial encounter with Larry Tillman in front of the

---

unfounded: the testimony and demonstrations presented by the victim and two eyewitnesses provided enough evidence to "support an inference, rather than mere speculation," as to each element of this offense, including the length of the weapon. *Head v. United States,* 451 A.2d 615, 622 (D.C.1982).

Contrary to Louis Bell's claim that there was insufficient evidence to support his convictions as an aider and abettor, we find ample evidence in the record to support a finding that he participated in the commission of the crime and that he sought by his actions to make it succeed. The complainant's testimony that Bell was standing on the scene looking left and right might alone support an inference that he was participating in the crime as a lookout. *See Montgomery v. United States,* 384 A.2d 655, 659 (D.C.1978) (evidence that appellant stood close to the principal and was continuously looking around supports an inference that he acted as lookout). But there was additional evidence of Bell's participation and intent as well: the complainant's testimony that Bell moved in concert

with Cornell Tillman, "getting in position" before the robbery, and the fact that during the robbery Bell frequently stared straight at the complainant but did not attempt to offer any assistance or stop the crime. These actions support an inference that Bell acted in concert with the Tillmans, that he aided the commission of the crime by acting as lookout, and that he intended that the crime succeed. *Byrd v. United States,* 364 A.2d 1215, 1219 (D.C.1976).

Finally, Bell contends that the trial court violated his Sixth Amendment right to confront adverse witnesses by refusing to allow him to cross examine the complainant concerning certain events occurring prior to the commission of the crime, to which the complainant had briefly referred on direct examination. We find that despite its exclusion of evidence relating to the prior events, the trial court permitted enough "meaningful degree of cross-examination" in other ways, to allow Bell, had he chosen, to refute any adverse implications arising from the witness' brief references. *Springer v. United States,* 388 A.2d 846, 854 (D.C.1978).

7-11 store was corroborated by the testimony of three eyewitnesses. His testimony concerning events occurring at the gas station after the shooting was corroborated by police officers on the scene, and by the gas station cashier.

Cornell Tillman presented an alibi defense, testifying on his own behalf that he spent the evening and night of March 22 at the home of his girlfriend, Christina Bloodworth. The latter corroborated his testimony.

Larry Tillman presented a partial denial defense. He testified that on his way to the 7-11 to buy a drink he met Lewis, who had previously sold him some bad drugs. He had words with Lewis, at one point putting his hand on Lewis' shoulder. Lewis, angered by the physical contact, challenged him to a fight. The two went behind the liquor store and began to fight. Tillman knocked Lewis down, took a bag containing some drugs from him, and left the scene. He denied having shot Lewis; he also denied having seen Cornell Tillman or Louis Bell in the area at the time.

Louis Bell admitted being present at the events in question, but claimed innocence. He testified that on the night of March 22 he was on his way into the liquor store when he recognized Donald Lewis' voice coming from behind the store. He went around to the back of the store, where he saw Lewis up against the wall, Larry Tillman holding "some type of weapon" to him, and a third man who looked like Cornell Tillman. Lewis was in the process of removing his clothes. Bell did not assist his friend Lewis, because he feared for his life. When he heard gunshots, he ran in the direction of his mothers' house to call for assistance, but was stopped by two men whom he did not recognize as plainclothes police officers. He was then taken to the gas station and identified by Lewis.

During the trial, counsel for all three defendants moved for severance based on irreconcilable differences between Bell's defense and that of each of the Tillmans.[2] The trial court denied the motions, citing *Sweet v. United States,* 438 A.2d 447 (D.C. 1981).[3]

## II

■ Several defendants may be joined for trial pursuant to Super.Ct.Crim.R. 8(b).[4] When two or more persons are charged with jointly committing a criminal offense, a strong presumption arises that they will be tried together. *Jennings v. United States,* 431 A.2d 552, 556 (D.C.1981), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). Nevertheless, a defendant may move for a severance under Super.Ct.Crim.R. 14 if it appears that he is prejudiced by joinder with other defendants.[5] The decision whether or not to grant a motion for severance rests within the discretion of the trial court, and will be reversed by this court only when that discretion has been abused. *Ready v. United States,* 445 A.2d 982, 986 (D.C.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983); *Sweet, supra,* 438 A.2d

---

**2.** Neither of the Tillmans claims his defense to be irreconcilable with that of the other Tillman.

**3.** Cornell and Larry Tillman first moved for severance after counsel for Bell had made her opening statement. The judge denied their motions without prejudice, stating that he would make a final ruling after it became clearer what Louis Bell's defense was to be. At the close of the defense evidence, Cornell Tillman renewed his motion for severance, and Bell joined in the motion. Larry Tillman did not renew his earlier motion at this time.

**4.** Super.Ct.Crim.R. 8(b) provides, in pertinent part:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

**5.** Super.Ct.Crim.R. 14 provides, in pertinent part: "If it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together, the Court may ... grant a severance of defendants or provide whatever other relief justice requires."

at 450; *Johnson v. United States*, 398 A.2d 354 (D.C.1979).

Appellants' motions for severance are based upon the prejudice alleged to have been caused them by the irreconcilability of their defenses. This jurisdiction has long recognized that

> [p]rejudice from joinder of defendants may arise ... where the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty....

*Rhone v. United States*, 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). Later decisions of this court have clarified the meaning of this cryptic statement in *Rhone*.

First, we have stated that the problem which *Rhone* addresses does not arise from the kind of minor differences which are inevitable among codefendants' presentations, and which are generally left to the jury to sort out. *Ready, supra*, 455 A.2d at 986. Rather, severance under *Rhone* requires a "clear and substantial contradiction between the respective defenses," causing inherent irreconcilability between them. *Williams v. United States*, 382 A.2d 1, 8 (D.C.1978).

Secondly, we have explained that the existence of irreconcilable defenses in itself is not enough to mandate severance. The irreconcilability must create a *danger* that the jury will conclude guilt from the conflict alone; it is upon this danger that the trial court must focus its inquiry. *Johnson, supra*, 398 A.2d at 368 n. 11; *Ready, supra*, 445 A.2d at 986–87; *Sweet, supra*, 438 A.2d at 451. "Stated another way, the task of the court is in assessing *the risk* of the jury's being misled into finding guilt from the existence of the conflicting defenses alone." *Johnson, supra*,

398 A.2d at 368 n. 11 (emphasis in the original). We have explained further that the degree of such risk depends upon the extent of evidence offered against the defendant, independent of the conflicting evidence presented by the codefendant(s). *See, e.g., Ready, supra*, 445 A.2d at 987.

Confusion has arisen as to *how much* independent evidence is necessary in order for the trial court to find that the jury was unlikely to have been swayed to convict by the conflict in defenses alone. Despite the efforts at clarification made in some of our decisions, this confusion appears to have persisted, as is indicated by cases discussed hereinafter. We, in turn, will persist in attempting to dispel it.

In *United States v. Leonard*, 161 U.S. App.D.C. 36, 47–48, 494 F.2d 955, 966–67 (1974), the United States Court of Appeals, stressing the word "alone" in the above-cited passage from *Rhone*, concluded that "where independent evidence of each defendant's guilt supports the jury's verdict, the conflict does not necessarily prejudice the defendants to the extent that a district court's refusal to sever must be considered a clear abuse of discretion." (Citations omitted.) [6] This statement in *Leonard* was subsequently cited in an opinion by a division of this court, in which an argument put forth by the government was discussed as follows:

> The government points to the word "alone" in *Rhone v. United States, supra*, as meaning that the motion to sever is not improperly denied where there exists *any* evidence independent of codefendants' or codefendants' witness' testimony upon which a jury could convict. *See United States v. Leonard....*

*Hamilton v. United States*, 395 A.2d 24, 28 (D.C.1978) (emphasis added).[7] *See also West v. United States*, 499 A.2d 860, 867 (D.C.1985).

---

**6.** *Leonard* is not binding upon this court. *See* M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.1971).

**7.** The government has not made this argument in the present case, but has instead correctly

recognized the standards which we set out in cases subsequent to *Hamilton* (*see infra* p. 171).

Decisions since *Hamilton*, however, should have left no doubt that this court does not subscribe to the notion, rightly or wrongly extrapolated from the words of *Leonard*, that the quantum of independent evidence needed to overcome the prejudice resulting from irreconcilable defenses is merely that required to sustain a conviction. In *Johnson, supra,* 398 A.2d at 368 n. 11, we noted that

> [t]he inquiry is not simply whether there is sufficient competent evidence to sustain the conviction. Conflicts in defendants' evidence occur after the government has rested. Thus, a condition precedent for the existence of a *Rhone* problem is the government having presented a sufficient case to sustain a conviction, if obtained.

*See also Sousa v. United States,* 400 A.2d 1036, 1042 (D.C.), *cert denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *Sweet, supra,* 438 A.2d at 451. Therefore, we have held, and we now reiterate, that in ruling on a defendant's motion to sever, the trial court must determine whether the defenses are inherently irreconcilable. If so, it must then "determine whether there would be available at trial enough independent evidence of appellant's guilt—*beyond that required for the government to survive a motion for judgment of acquittal* —so that the court reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant guilty." *Ready, supra,* 445 A.2d at 987 (emphasis added) (footnote omitted). Indeed, to hold that mere evidentiary sufficiency was the test for severance for irreconcilable defenses would be to read

out of our jurisprudence reversal for abuse of discretion in such rulings.

### III

■ With these principles in mind, we turn to the claims in the present appeal. Cornell Tillman and Louis Bell contend that their defenses are irreconcilable because while Bell's testimony placed Cornell Tillman on the scene, Tillman himself argued an alibi. This court has previously found an alibi defense to be irreconcilable with a defense claiming innocent presence and implicating the alibi defendant. *See Ready, supra,* 445 A.2d at 987; *Ellis v. United States,* 395 A.2d 404, 409 (D.C.1978), *cert. denied sub nom. Barnes v. United States,* 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979).

Larry Tillman and Louis Bell claim *their* two defenses also to be mutually exclusive. Bell claimed innocent presence and pointed the finger at Larry Tillman as having had a weapon; Tillman admitted his presence, but denied having had a weapon or having shot the complainant, and denied having seen Bell on the scene.[8]

Assuming *arguendo* that the defenses were irreconcilable, the government presented "enough independent evidence of appellant[s'] guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the court reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant[s] guilty." *Ready, supra,* 445 A.2d at 987. The testimony of the complainant, Donald Lewis, without more would have provided the necessary independent evidence as to all three appellants. *See Ellis,*

---

**8.** This argument is less persuasive. Bell did contradict Larry Tillman's testimony by claiming that Tillman carried a weapon; however, his testimony was hardly convincing on this point. He said, "I don't know if he had it [a gun]. He looked like he had some type of weapon." Also contradictory was Larry Tillman's denial of having seen Bell, when Bell claimed to have been present. But this contradiction fades somewhat in the light of Bell's testimony that he did not make eye contact with either of the Tillmans,

and that he was only present for a "matter of seconds." A juror could reasonably conclude that Bell and Tillman were both telling the truth, but that Tillman just did not notice Bell. Other conflicts between their respective defenses, such as discrepancies relating to the presence of Cornell Tillman, and the extent to which Lewis removed his clothes, were not the kind of "clear and substantial contradiction[s]" which constitute inherent irreconcilability. *Williams, supra,* 382 A.2d at 8.

*supra,* 395 A.2d at 409 (strength of the testimony of one eyewitness sufficient to overcome danger of prejudice from conflicting defenses); *Sweet, supra,* 438 A.2d at 451 ("[t]he presence of other strongly incriminating evidence ...—most importantly, the victim's testimony—indicates that the defense of each codefendant was not solely contradicted by the other's defense"). But there was other inculpatory evidence presented as well. Eyewitnesses Gregory Lawson and Walter and Katherine Smith gave testimony corroborating Lewis' account of the events occurring in front of the 7–11 store; the latter two also gave demonstrations of how they had seen Larry Tillman lead Lewis away to the liquor store while poking something in his lower back. All three heard shots a short while later. Walter Smith saw Cornell and Larry Tillman in front of the liquor store after the shots were fired, contrary to Cornell Tillman's claim not to have been present. Officer O'Neal, who stopped Bell running from the scene of the shooting, testified that Bell had appeared nervous, and had refused to give his name or explain why he was running. All of this additional evidence corroborated the complainant's account, and additionally implicated each of the appellants.

Given the strength of the independent evidence presented by the complainant and the other government witnesses, we can not say that the trial judge abused his discretion in finding that "there was no danger that the jury might conclude from the conflict alone that ... defendants committed the offenses charged." *Sweet, supra,* 438 A.2d at 451.

*Affirmed.*