Keith **REYNOLDS**, Isadore Gartrell, Appellants,

v.

**UNITED STATES**, Appellee.

Nos. 89–137, 89–200.

District of Columbia Court of Appeals.

Submitted Oct. 10, 1990.
Decided March 14, 1991.

Calvin Steinmetz, Washington, D.C., appointed by this court, filed a brief for appellant Reynolds.

William T. Morrison, Washington, D.C., appointed by this court, filed a brief for appellant Gartrell.

Jay B. Stephens, U.S. Atty., John R. Fisher, Helen M. Bollwerk and Patrice I. Kopistansky, Washington, D.C., Asst. U.S. Attys., filed a brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Appellants Gartrell and Reynolds were jointly charged and convicted of armed robbery, D.C.Code §§ 22–2901, –3202 (1989), carrying a pistol without a license, *id.* § 22–3204, and malicious destruction of property, *id.* § 22–403. Three issues are raised on appeal: the right to severance on account of irreconcilable defenses, sufficiency of the evidence to convict of malicious destruction of property, and limitation of cross-examination in violation of the Confrontation Clause. We affirm.

I

Late in the evening of July 12, 1988, Gregory Scott, driving a white Cougar automobile borrowed from a friend,[1] stopped to use a telephone at a gas station. After completing his phone conversation, Scott turned to see two men standing near him, later identified as appellants. Gartrell pulled a gun, announced he was taking the car, and got into the driver's seat, while Reynolds entered on the passenger side. After they drove off, Scott called the police and gave a description of the robbers and the car, including the tag numbers.

About an hour and a half later, a police officer on patrol saw the white Cougar and began to follow it. The car accelerated at a high rate of speed. After about ten blocks of high speed chase, the Cougar crashed into a Fire Department call box and was heavily damaged. The officer observed the driver, whom he later identified as Gartrell, flee up a driveway into a wooded lot behind nearby houses, and began a chase. However, when other units arrived and cordoned off the area, the officer went back and recovered a revolver on the floor of the car. He also noted that the windshield had been pushed out on the passenger side and that the person sitting there had probably been injured.

Gartrell was eventually found hiding beneath a mattress and box spring near the back of a house. Reynolds was apprehended lying beside a tree several houses from the crash site, with injuries to his mouth and forehead, and glass fragments in his hair. Reynolds claimed to be running from a crap game that had been robbed, and said he had been hit in the head with a bottle. However, a witness to the crash, Gary Evans, said he had seen Reynolds fleeing through his yard immediately after the crash.

Later that morning, police escorted Scott to the scene of the crash, where he identified the car and the gun. The next day, Scott identified Gartrell and Reynolds in a photo array as the robbers, and later made other line-up and in-court identifications.

At trial, Gartrell offered a misidentification and innocent presence defense. He testified that he was visiting his girlfriend at her apartment in Southeast on the night in question. He and his girl friend stepped outside while their baby was asleep. Intending to go to his mother's house, Gartrell claimed, he then got a ride in a white car from an unidentified man, with Reynolds sitting in the front passenger seat and Gartrell in the middle of the back seat. Although Gartrell subsequently tried to be let out, the driver kept going until a police car noticed and followed the car. At that point, the driver sped up until he crashed, whereupon both appellants ran. Gartrell claimed that he feared he had an outstanding parole warrant, and that explained why he fled and hid until the police found him. Reynolds presented no defense nor cross-examined Gartrell in any manner. In closing argument, his counsel argued misidentification without any specific reference to

---

1. The friend was Richard Pace, who at the same time borrowed Scott's newer car. The testimony was that Pace suggested the exchange, thinking Scott's car would be more economical to use in driving Pace's daughter on errands. Scott agreed to the exchange because he was tired of driving the stick shift in his car.

Reynolds' crap game alibi. However, Reynolds' counsel also argued in closing that Reynolds was resting his case on the government's evidence, which included testimony by the arresting officer concerning Reynolds' explanation for his apparent flight and head injury.

## II

As the first and most substantial issue on appeal, appellant Reynolds cites the trial court's failure to grant severance of his trial from that of his codefendant, Gartrell, pursuant to Super.Ct.Crim.R. 14.[2] Reynolds argues that since Gartrell's defense placed Reynolds in the Cougar automobile where Reynolds denied being, the defenses were irreconcilable and the joint trial so prejudicial that we must reverse his convictions. The controlling standard was most recently set forth in *Garris v. United States*, 559 A.2d 323, 329-30 (D.C.1989) (footnote omitted):

> To obtain a severance on the ground of irreconcilable defenses, a defendant must demonstrate a "clear and substantial contradiction between the respective defenses," causing inherent irreconcilability between them, *Tillman* [*v. United States*, 519 A.2d 166, 170 (D.C.1986) (citation omitted)], and that the irreconcilability creates a danger or risk that the jury will draw an improper conclusion from the existence of the conflicting defenses alone that both defendants are guilty. [*Id.*] The degree of such risk depends upon the extent of evidence offered against the defendant, independent of the conflicting evidence presented by the codefendant. *Id.; Ready* [*v. United States*, 445 A.2d 982, 987 (D.C.1982), *cert. denied*, 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983)]. Therefore, upon ruling that the defenses are inherently irreconcilable, the judge must determine whether there would be available

at trial enough independent evidence of a defendant's guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the judge reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find the defendant guilty. *Tillman, supra,* 519 A.2d at 171 (citing *Ready, supra,* 445 A.2d at 987).

Applying the *Tillman–Garris* principles to the instant case, we conclude that although Reynolds' defense was "inherently irreconcilable" with that of his codefendant, this irreconcilability alone does not warrant reversal on grounds of failure to sever.

### A

#### *Standard of Review*

The government maintains that our standard of review here is plain error; that is, whether the failure to sever was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial."[3] *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). We need not squarely resolve this issue because, as above indicated, we conclude that in any event no danger of prejudice arose from a joint trial here under the *Tillman–Garris* principles.

### B

#### *Irreconcilability of Defenses*

■ Appellant Reynolds' defense was that he did not participate in the robbery and was not in the car when it crashed, but rather was in the vicinity of the crash, with injuries to his mouth and forehead, because he had fled a crap game that had turned violent. Appellant Gartrell's defense, on the other hand, was that he did not participate in the robbery because he had merely taken a ride with an unidentified driver who would not stop. However, Gartrell

---

**2.** Super.Ct.Crim.R. 14 provides, in pertinent part:

> If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants ... for trial together, the Court may order an election or separate trials of counts, grant a

severance of defendants or provide whatever other relief justice requires.

**3.** The government cites alleged deficiencies in the content and timing of Reynolds' severance motion and the absence of a square trial court ruling.

not only admitted he was in the car when it crashed but also placed Reynolds in the front seat, thereby implicating Reynolds, or at least suggesting that Reynolds had fabricated his alibi. The government therefore concedes, and we agree, that there was indeed a " 'clear and substantial contradiction between the respective defenses,' causing inherent irreconcilability between them." *Garris, supra,* 559 A.2d at 329 (quoting *Tillman, supra,* 519 A.2d at 169) (citation omitted).

## C

### *Extent of Independent Evidence*

■ This case presents the sort of circumstances contemplated by the *Tillman–Garris* standard articulated above. The risk that the jury would improperly determine from the existence of the conflicting defenses alone that both appellants were guilty was minimal, precisely because the extent of independent evidence offered against appellants was so substantial as to go beyond that required to survive a motion for judgment of acquittal. *See Lemon v. United States,* 564 A.2d 1368, 1372 (D.C. 1989); *Ready, supra,* 445 A.2d at 987. Gregory Scott, the victim, testified that he had identified both appellants at several line-ups and photo arrays on the day after the robbery and later. Further, he provided a direct eyewitness identification of both appellants, of which he was confident enough to say he was "positive" he had correctly identified them as the robbers. His identification testimony was unwavering, consistent, and unchallenged on cross-examination. Moreover, Gary Evans, a witness who lived in the area of the crash, testified without challenge that he heard the collision, immediately went to the window, and saw Reynolds running through Evans' yard from the direction of the car

which crashed in front of his house. He identified Reynolds in a line-up some 30 minutes later by his body size, height, and the clothing he was wearing, although it appears he did not see appellant's face. Finally, David Nichols, the government's materials analysis expert, testified at length that glass fragments removed from Reynolds' head matched those from the car's windshield,[4] and that it wouldn't "make sense" for one sample to come from the windshield and the other from a bottle, as Reynolds claimed.

We have no trouble concluding that such direct eyewitness, circumstantial, and scientific evidence, taken together, constitute sufficient independent evidence of Reynolds' guilt within the *Tillman–Garris* line of cases.[5] Indeed, in *Tillman* itself the court held that "[t]he testimony of the complainant ... without more would have provided the necessary independent evidence as to all three appellants." *Tillman, supra,* 519 A.2d at 171. While that opinion did stress that there was corroborating eyewitness testimony, it nonetheless indicated that the strength of one eyewitness' testimony [6] may alone be sufficient to overcome the danger of prejudice from conflicting defenses. *Id.* at 171–172 (citing *Ellis v. U.S., supra,* 395 A.2d 404 at 409 (D.C. 1978)); *see also Ready, supra,* 445 A.2d at 987–988; *Sweet v. United States,* 438 A.2d 447, 451 n. 2 (D.C.1981) ("at the time that the trial court became fully aware of the nature of the conflict [in defenses], he was aware of the weight of the government's case and could therefore conclude that a jury conclusion of guilt would not have resulted from the defense conflict alone").

Appellant likens his case to *Johnson v. United States,* 398 A.2d 354 (D.C.1979), where a panel of this court found grounds for reversal in the trial judge's refusal to sever defendants where the judge took the

---

**4.** He testified that the two samples "have the same color, the same thickness, the same type of manufacturer, the same density, the same refractive index and the same dispersions," and that he "could consider it remote" that they did not "originate[ ] from the same source."

**5.** Normally, of course, the trial court will make this determination. However, given the posture

of this case, in which we must assess asserted reversible error, see part A, *supra,* we feel confident in concluding that a trial court would make such a determination.

**6.** In *Tillman,* it appears that the defendants were all previously known to the eyewitness.

erroneous legal position that the fact of irreconcilable defenses was no reason for granting a severance.[7] Not only does the trial judge's legal error separate *Johnson* from the case before us, but the cases are also quite different on their facts. In *Johnson,* the testifying codefendant did not merely testify against appellant; he in effect became the "star witness" against him. *Id.* at 368. Since there was so much independent evidence here and since Gartrell's testimony, if anything, merely corroborated some of it, it is difficult to see how, even if implicating Reynolds, Gartrell became a "star witness" against him. Thus, *Johnson* does not mandate severance in the case before us here. *See Mitchell v. U.S., supra,* 569 A.2d 177 at 182 (D.C.1990) ("[a]ppellant's general denial was not contradicted solely or even primarily by [codefendant's] defense" even though codefendant's counsel became a "second prosecutor"; no abuse of discretion in refusal to sever); *Ready, supra,* 445 A.2d at 987 (although defendant claiming alibi actually implicated by codefendant claiming innocent presence and placing defendant at the scene of the crime, refusal to sever upheld).

## III

■ We find no merit in appellants' remaining contentions. First, Reynolds argues that the evidence was insufficient to convict him of malicious destruction of property because, as a passenger in the car, he lacked the guilty knowledge necessary for the jury to find he aided and abetted the destruction of the car.[8] However, we have held that "[an] aider and abettor need not necessarily have intended the particular crime committed by the principal; an accessory is liable for any criminal act which in the ordinary course of things was the natural and probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him." *Morriss v. United States,* 554 A.2d 784, 789 (D.C.1989). We review Reynolds' challenge under the standard of " 'whether there was sufficient evidence from which a reasonable juror could fairly conclude guilt beyond a reasonable doubt' " and "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Hawthorne v. United States,* 476 A.2d 164, 167 (D.C.1984) (citation omitted). Since there was strong evidence that the crime of malicious property destruction occurred in the course of a police chase following a robbery and that Reynolds participated in the robbery and was in the car when it crashed, the other elements of the offense of aiding and abetting the malicious destruction could readily be determined by a reasonable jury beyond a reasonable doubt. *See Wesley v. United States,* 547 A.2d 1022, 1026–27 (D.C.1988) (conviction of aiding and abetting proper where crime occurred and defendant associated himself or participated in it with requisite guilty knowledge).

■ Finally, appellant Gartrell argues that the trial court violated his Confrontation Clause rights by limiting cross-examination of Richard Pace by Reynolds' counsel concerning certain details about the trade of automobiles.[9] Reynolds' counsel asserted at trial that with further ques-

---

7. Since in *Johnson* the appellant's codefendant had been acquitted and hence the issue would not likely arise on retrial, we noted that we did not need to decide the question whether application of the proper legal test, now exemplified in *Garris,* would have mandated a severance. 398 A.2d at 368 n. 11.

8. The trial court denied his motion for judgment of acquittal, after an extensive colloquy with counsel, on the theory that *by staying in the car,* Reynolds was "equally culpable for the [destruction of property] even though he wasn't the person who actually drove the vehicle."

9. See note 1, *supra.* The limitation arose as the result of the following line of questioning:

   [Reynolds' Counsel]: Mr. Pace, where were you planning to take your daughter that day?
   [Witness]: Just—I usually pick her up, take her to McDonald's, things like that.
   [Reynolds' Counsel]: Just driving around the metropolitan area?

   \* \* \* \* \* \*

   [Witness]: No. I go visit my kin, sister, just basically take her out and have some fun with her.

tions about why Pace needed to switch cars, some other motive for the trade might emerge which could "unravel the whole case." When the court asked Reynolds' counsel if he had "a good faith basis" for believing that would occur, however, counsel answered "no." The trial court then ruled that it was "a totally collateral issue" why he loaned him the car, and sustained the government's relevance objection. Gartrell's counsel did not participate in the colloquy with the court, nor did he object to the court's restriction of Reynolds' cross-examination. However, even assuming that Reynolds' efforts preserved the alleged error on Gartrell's behalf,[10] we find no violation of the Confrontation Clause, which guarantees a defendant only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (citation omitted; emphasis in original). "[T]rial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about ... interrogation that is ... only marginally relevant." *Id.*

*Affirmed.*

[Reynolds' Counsel]: Where do your children live?

\*   \*   \*   \*   \*   \*

[Prosecutor]: Objection, relevance.

10.  *But cf. Bush v. United States*, 516 A.2d 186, 195–96 (D.C.1986) (failure of appellant to object to restriction on codefendant's cross-examination of robbery complainant is a "recognition of the fruitlessness of such a pursuit").