Theodore STATON, Appellant,

v.

UNITED STATES, Appellee.

No. 80–811.

District of Columbia Court of Appeals.

Argued May 5, 1983.

Decided Sept. 30, 1983.

---

Thomas L. Fairfield, law student counsel, with whom Steven H. Goldblatt, Samuel Dash, Washington, D.C., G. Richard Strafer, and Suzanne M. Halbardier, law student counsel, were on briefs, for appellant.

John E. Stevens, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Judith Hetherton and William J. O'Malley, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN and BELSON, Associate Judges, and KELLY, Associate Judge, Retired.

BELSON, Associate Judge:

Following a jury trial appellant was found guilty of rape while armed, D.C.Code §§ 22–2801, –3202 (1981) and armed robbery, *id.* §§ 22–2901, –3202, and sentenced to concurrent terms of 10 to 30 years. Thereafter he noted this appeal, in which he contends that the trial court erred in: 1) permitting the government to impeach a defense witness by eliciting certain evidence of bias; 2) admitting into evidence a confession that related to an uncharged offense, and 3) admitting into evidence a confession that was involuntary. While we reject appellant's first and second arguments, we remand the record to the trial court for more explicit findings relative to the admissibility of the confession as well as any appropriate further proceedings.

I

At approximately 10:30 p.m. on June 16, 1978, complainant was grabbed from behind as she walked along Hannah Place, Southeast, toward Benning Road. Her attacker pressed a sharp object against her neck and forced her into nearby woods, where he raped her. Due to poor lighting complainant could not see her attacker's face. She was, however, able to see that he was a dark-skinned black who was wearing a white shirt with black designs. In addition, she was able to form an impression of his height as compared to her own. After the rapist had left, she struggled from the woods to see a man wearing a white shirt with black designs who was standing near a parked blue Volkswagen. Upon becoming aware of complainant's presence, the man dragged her back into the woods, where he bound and gagged her.

Shortly thereafter, at approximately 11:00 p.m., complainant managed to attract the attention of two men, who summoned the police. The men discovered the complainant while investigating a loud collision that had just taken place between the same blue Volkswagen and a parked van that was owned by one of the men. At about this time, another witness saw appellant

emerging from the same woods into a different street.

When the police arrived, they found that the Volkswagen, at this point unoccupied, contained articles belonging to complainant. Police traced ownership of the car to Sharon Quick, who lived with appellant. The police ascertained that appellant had reported the car as stolen after the rape, at approximately 11:30 p.m. A police officer was dispatched to appellant's apartment, where he told appellant that the car he had reported stolen had figured in a rape, and advised appellant of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant changed his clothes and voluntarily accompanied police to the scene of the rape, where a showup was conducted.

During the showup appellant was told to stand in front of a parked police car in which complainant was seated. Detective Esther Dimery was inside the car with complainant during the identification procedure; Detectives Steven Matthews and Lorren Leadmon stood immediately outside the car. Through the car's open window Detective Matthews explained the procedure to complainant. Complainant initially indicated that appellant was not her attacker because his clothes were different. Detective Matthews then instructed her to disregard clothing, which could have been changed, and to focus on build. Complainant then indicated that she was not sure. Complainant testified at trial that she then said that "from his build and everything" she was sure appellant was the rapist.

Following the showup appellant explained his whereabouts earlier in the evening to Detectives Leadmon and Mendez. He voluntarily produced for them the clothing he claimed to have been wearing when the Volkswagen had been stolen from the parking lot of a 7-Eleven store between 10:30 and 10:45 p.m. The next day, the keys to the Volkswagen were found at the scene of the rape, as was a hat of the type appellant's girlfriend said appellant was

wearing when he left their dwelling early on the night of the rape.

The day after the rape appellant, who had not been charged, voluntarily came to the police station. After waiving his *Miranda* rights he gave an exculpatory statement and was allowed to leave.

On June 23, 1978, Detectives Leadmon and Mendez arrested appellant at his home and once again advised him of his *Miranda* rights. After being taken into custody appellant made two statements to the police. The first was exculpatory. In the later statement he confessed to committing a rape at about the same time and in the same area as the rape of complainant, but described a victim other than complainant and indicated a different location as the site of his initial contact with the victim.

## II

■ Appellant's first contention is that the trial court erred in allowing the government to impeach Detective Esther Dimery, who testified for the defense, by eliciting evidence that tended to show bias. Dimery, who had been with the complaining witness during the June 16 showup, testified at trial that the complaining witness had stated throughout the showup that appellant was not her attacker. In this respect Dimery's testimony differed from that of Detective Matthews, who also had been present during the showup, and who had testified that after being instructed to disregard appellant's clothing, complainant said she was unsure, and complainant's testimony that she was able to state that appellant had the same build as her attacker.

On cross-examination the government attempted to show Dimery's bias by inquiring into an internal police investigation that was initiated after Dimery testified at the preliminary hearing in a manner consistent with her testimony at trial (*i.e.* that the complaining witness had affirmatively maintained that appellant was not the rapist) but inconsistent with the affidavit Dimery had prepared in support of the arrest warrant, which stated that although the

complaining witness could not identify appellant, she said he fit the rapist's general description. During cross-examination Dimery acknowledged that as a result of her handling of the investigation she had been criticized by superiors, who attempted to transfer her from the Sex Squad.

It was the government's theory, therefore, that the criticism which Dimery had received in connection with her performance on this case had angered her, thereby rendering her biased against the government's position. Appellant, by contrast, maintains that the government's line of questioning was not probative of the issue of whether Dimery was biased, and hence was irrelevant. In this connection appellant notes that since Dimery's testimony at trial was consistent with her preliminary hearing testimony, the intervening internal police investigation obviously had not led her to change her testimony, and thus her trial testimony cannot be viewed as the product of bias. On the record presented here we cannot agree.

If the criticism of Detective Dimery's performance had occurred only after the preliminary hearing we might find appellant's argument more persuasive. The trial transcript indicates, however, that Dimery had been criticized for her handling of the case almost immediately, starting at the scene of the June 16 showup.[1] It is therefore plausible that such criticism may have generated feelings of hostility that colored her testimony at both the preliminary hearing and at trial. Thus, inquiry into this matter was within the wide range of information that would be of potential value to the jury in assessing Dimery's credibility. *See generally Best v. United States,* 328 A.2d 378, 381 (D.C.1974). We therefore conclude that the trial court did not abuse its discretion in permitting this line of cross-examination.

■ Appellant also contends that the government's impeachment of Detective Dimery was improper because it impermissibly injected into the case the government's own opinion about Dimery's investigation, her credibility, and ultimately, appellant's guilt. Appellant maintains that the references to the internal police investigation improperly invaded the jury's province by suggesting that the government had "nonjudicially reached conclusions" as to Dimery's veracity and appellant's guilt. We disagree.

The record discloses that the government neither stated nor implied to the jury that the investigation was premised on allegations of untruthfulness. The government's questioning did not seek to explore the substantive results of the internal investigation (*i.e.* whether Dimery had been found to have testified untruthfully at the preliminary hearing). Rather, the government's questioning clearly was directed at Dimery's *reaction* to the investigation and the criticism of her peers—specifically, whether she had become angry, and whether that anger affected her testimony. We do not view such bias cross-examination as in any sense invading the jury's province.[2]

1. When asked at trial whether she had become angry when Detectives Matthew and Leadmon told her immediately following the June 16 showup that she should have arrested appellant on the spot, Detective Dimery responded negatively. She did not deny, however, that such criticism had taken place at the scene of the showup.

2. We are similarly unpersuaded by appellant's contention that it was improper to allow the government to inquire into bias in this instance because the government had triggered the formal investigation by registering a complaint regarding Detective Dimery's performance at the preliminary hearing. In essence, appellant argues that the government generated the bias evidence that was used to impeach Dimery at trial. Allowing the government to use such evidence, appellant argues, presents an obvious potential for abuse, since the government might well call for investigation of any police officer who testifies against the government at a preliminary hearing, thereby ensuring the existence of bias evidence. We are unwilling to accept appellant's view that the United States Attorney's Office would adopt such a practice, which necessarily would entail violations of its ethical obligations. *See* Model Code of Professional Responsibility, EC 7–13, 7–14 (1980).

 In sum, we conclude that the trial court did not err in permitting inquiry into Detective Dimery's possible bias. It is clear that bias is always a proper subject for cross-examination, *see, e.g., Springer v. United States,* 388 A.2d 846, 855 (D.C.1978), and that an important way of demonstrating a witness' bias is showing the possibility of hostility stemming from a previous conflict between the witness and the adverse party. *See, e.g., Best, supra,* 328 A.2d at 381. We are satisfied that in the case at hand the court did not abuse its discretion in implicitly determining that the probative value of the bias evidence outweighed any potential for prejudice. *See, e.g., Washington v. United States,* 397 A.2d 946, 950 (D.C.1979).

### III

 We turn next to two contentions appellant makes concerning his statements to the police of June 23, 1978. The first is that his inculpatory statement of that date related to another rape and, hence, constituted inadmissible evidence of another crime. Appellant contends that because of discrepancies between the circumstances of the rape to which he confessed and the known facts of the instant rape, his confession must be regarded as relating to a different or fictional rape. Consequently, appellant regards the confession as other crimes evidence that was irrelevant and inadmissible under any of the exceptions recognized in *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). We disagree.

The circumstances of the rape to which appellant confessed conformed closely to the circumstances of the charged offense: he confessed to raping a woman in the same woods where complainant was raped at the same time that she was being raped. Despite discrepancies between the victim's hair style, attire, and the location of the assailant's first contact with the victim, we are satisfied that the trial court had ample grounds for *concluding,* as it did by unmistakable implication, that appellant's confes-

sion related to the charged offense. It follows that the confession was both relevant and admissible, and reference to the *Drew* criteria was unnecessary.

### IV

Finally, we address appellant's second contention concerning his statements of June 23, 1978: that the trial court erred in admitting the statements because they were made by appellant without a knowing and intelligent waiver of his constitutional rights.

On the night of the rape, June 16, appellant was twice advised of his *Miranda* rights. He voluntarily accompanied detectives to a showup at the scene of the rape, and discussed his actions with them. Appellant testified at the suppression hearing that on the night of the 16th, he was told by police officers that "it would go very bad" for him in court if he did not tell them what had happened and that they would help him "if [he] could confess to rape." Nevertheless, he made no incriminating statements at that time.

On the next day, June 17, appellant went voluntarily to the police station. He again was advised of his *Miranda* rights. He waived his right to remain silent and his right to have an attorney present, and gave police an exculpatory statement.

On June 23, appellant was arrested and again was informed of his *Miranda* rights. He then made two statements, the first exculpatory and the second inculpatory. Appellant asserted at the suppression hearing that those two statements were coerced. Specifically, appellant testified that during his interrogation in the early morning hours of June 24, various detectives or police officers made comments of the following nature to him: that the longer he sat there without confessing, the longer he would sit there; that he could not go in front of a judge saying he did not commit the rape when everything indicated that he had committed the rape—that it would make him look stupid to do so; that he "wasn't needing an attorney," and "a lawyer wouldn't

take this case anyway;" that he had to sign a statement, and that he would "do more time if [he] didn't confess and . . . less time if [he] did confess."

The record is not clear whether appellant alleged that any or all of these remarks were made before the first, exculpatory, statement, but it is clear that he attributed his second, inculpatory, statement to the coercion applied by the remarks.

Following appellant's testimony at the suppression hearing, both parties rested. The government did not seek to call or recall any witness on rebuttal, even though Detective Leadmon, who had testified shortly before appellant, had been present during most or all of appellant's interrogation on June 23. Thus, at the close of evidence in the suppression hearing, there was no testimony explicitly rebutting appellant's assertion that he was subjected to coercive remarks prior to his confession.

Following argument, the trial judge denied appellant's motion to suppress. She concluded that each of the statements of June 23 was given voluntarily after a waiver of rights and was not the result of coercive action by the police. The trial judge referred to appellant's claim of "harassment or overbearing behavior by the Police Department," but she made no finding as to whether the alleged coercive utterances ac-

tually were made. The trial judge's ruling is set forth in full in the footnote below.[3]

Appellant argues that the trial court was required to credit his unrebutted testimony concerning coercive police utterances, citing *Haynes v. Washington,* 373 U.S. 503, 514, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963). Appellant reasons further that if the police made the remarks in question, it must follow that his waiver was not freely and voluntarily given, and his ensuing statements therefore must be suppressed. He argues that the techniques employed were among the classic coercive interrogating techniques identified in *Miranda, supra,* 384 U.S. at 448, 86 S.Ct. at 1614, *et seq.*

The government rejoins that the trial court's finding of waiver of rights and voluntariness was supported by substantial evidence. It asserts that even if appellant's self-serving testimony were taken at face value, the trial court would not be required to conclude that appellant, who was familiar with the criminal justice system and on probation from the U.S. District Court for the District of Columbia, had not knowingly and voluntarily waived his rights.

■ Appellant is incorrect that the trial court was required to credit his testimony concerning the alleged coercive remarks by police. The credibility of a witness is

---

**3.** After considering the pleadings and the evidence as well as the arguments of counsel, the Court finds and concludes that the motion to suppress statements should be denied. More specifically, the Court finds that at all pertinent times, Mr. Staton was advised of his rights and, as he indicates, he understood those rights.

The Court further finds that each of these statements was voluntarily given after a waiver of the rights. Various documents which are before the Court indicate Mr. Staton's personal responses in waiving those rights and, as the Court has indicated, Mr. Staton, himself, acknowledges understanding those rights as indicated by his further responses to questions that he has previously had occasion to be before the Court and to be placed under arrest and to hear his rights.

With regard to the question of harassment or overbearing behavior by the Police Department, the Court finds and concludes that although there are three statements, there was

some six days elapsed between the first statement and the second and third statements, during which time Mr. Staton was in the community, free to go about his business, not under arrest, not subject to any coercive circumstances.

The Court further, credits the testimony that it corroborated by Mr. Staton, himself, that he appeared at the Police Department in response to a request to come to the police station to give the statement and he was released immediately thereafter.

The Court further notes that statements which were taken do not appear to have been the product of extremely lengthy interrogation. The time required to take these various statements appears to be relatively brief and the Court concludes that they were not the result of coercive action by the Police.

For these reasons, as indicated, the Court will deny the motion to suppress the written statements as well as the oral statements.

ordinarily to be resolved by the trier of fact. *Communist Party of the United States v. Subversive Activities Control Board,* 107 U.S.App.D.C. 279, 283–84, 277 F.2d 78, 82 (1959), *aff'd,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). The trier need not believe the testimony of a witness even though the witness' testimony is uncontradicted. *Martino v. Palladino,* 143 Conn. 547, 123 A.2d 872, 873 (1956); *Alexander v. Tingle,* 181 Md. 464, 30 A.2d 737, 738 (1943); *see* Annot., 62 A.L.R.2d 1191, 1194 (1958), particularly where the witness has a personal interest in the result. *Sonnentheil v. Christian Moerlein Brewing Co.,* 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492 (1899); Annot., *supra,* 62 A.L.R.2d at 1198; 81 Am.Jur.2d 663–64 (1976). Here, appellant clearly had an interest in the outcome, and the court could have concluded, taking account of all that was before it, that his testimony was not to be believed.

In another confession case, the Second Circuit rejected a similar contention by a defendant that his testimony had to be credited in the absence of specific contradiction by government witnesses. *United States ex rel. Liss v. Mancusi,* 427 F.2d 225, 227–28 n. 4 (2d Cir.1970). There, as here, the defendant relied on *Haynes, supra.* The Second Circuit noted that *Haynes* did not decide whether the defendant's testimony alone in the light of equivocal testimony by government witnesses would warrant a holding that the confession was coerced. The Supreme Court in *Haynes* had said, "We need not pursue such an inquiry, however, since the record contains other probative, convincing and uncontradicted evidence." *Haynes, supra,* 373 U.S. at 508, 83 S.Ct. at 1340. The Second Circuit proceeded to distinguish *Haynes* from the case before it.

*Haynes* is distinguishable from the instant case also. *Haynes* was decided in 1963, 3 years before *Miranda.* Thus, the defendant in *Haynes* was not advised of his right to remain silent or his right to have an attorney present or that his statements could be used against him. Here, as we have noted, appellant was repeatedly given *Miranda* warnings.

In addition, in *Haynes* there was corroboration of the defendant's assertions concerning coercive tactics, some being found in his confession itself. Here, there is no such corroboration.

Finally, *Haynes* is distinguishable also in that one of the officers accused of coercing Haynes was given the opportunity to contradict Haynes' assertions, but gave only equivocal replies. Here, on the other hand, Detective Leadmon was not asked by either counsel whether the claimed coercive utterances were made, and the tenor of his testimony concerning the interrogation conflicted at least implicitly with appellant's.

■ Given the foregoing, we do not view *Haynes* as requiring the trial judge automatically to accept as true appellant's self-serving testimony regarding coercive police tactics. At the same time, we note that appellant's allegations, if true, raise grave questions about the voluntariness of his confession. If all of the asserted remarks were made, they could have had the effect of negating certain of the *Miranda* warnings. Having informed an accused of his rights, the police are not free to threaten or cajole him into waiving them. *Miranda, supra,* 384 U.S. at 476, 86 S.Ct. at 1628.

■ However, it may be that the police conduct here, while not commendable, was in fact not as egregious as appellant has claimed. As we have often stated, the question whether appellant's confession was voluntary turns upon the trial judge's appraisal of the totality of the circumstances. *See, e.g., Peoples v. United States,* 395 A.2d 41, 43 (D.C.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2826, 61 L.Ed.2d 277 (1979); *United States v. Lyon,* 348 A.2d 297, 298–99 (D.C. 1975).

■ Such a conclusion by the trial court is, of course, subject to review by this court. A trial judge's finding of voluntariness will not be overturned on appeal "unless it was without substantial support in the evi-

dence." *Calaway v. United States,* 408 A.2d 1220, 1225 (D.C.1979).

 From the record before us, we are unable to determine the basis of the trial court's decision; hence we are unable to determine whether the court's finding of voluntariness was supported by the record. More specifically, we are unable to determine whether the trial court concluded that (1) appellant's uncorroborated testimony concerning coercion was incredible, although unrebutted, or (2) some or all of the coercive statements were in fact made, but, given the totality of the circumstances, did not render appellant's statements involuntary.

 The trial court ordinarily "need not make formal findings of fact or write an opinion" when ruling upon such motions to suppress. *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). Further, under the Superior Court rules the trial judge is not required to state findings of fact on the record in ruling upon a motion in a criminal proceeding. *See* Super.Ct.Crim.R. 47–I(g) and comment thereto. Nevertheless, the trial court's determination "must be reliable and clear-cut and [its] conclusion that the confession is in fact voluntary must appear from the record with unmistakable clarity." *Wells v. United States,* 407 A.2d 1081, 1089 (D.C.1979). This court has statutory authority to remand any cause or require further proceedings in the interest of justice. D.C.Code § 17–306 (1981).

Because we conclude this court cannot fulfill its review function based on the record now before it, we remand the record in this case to the trial court for further findings. These must include, at a minimum, (1) the specific nature of coercive statements, if any, or other coercive behavior, if any, by the police and the circumstances under which they were made, and (2) the other circumstances, if any, which tended to offset the effect of any coercive statements or behavior. In basing its findings on the totality of the circumstances, as it must, the trial court should provide an explanation of how it has reached its conclusion.

*Affirmed in part and the record remanded for further proceedings consistent with this opinion.*