**Ronald E. GARRIS**

**and**

**Benny L. Walker, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 86–1098, 86–1518.**

District of Columbia Court of Appeals.

Submitted April 5, 1989.

Decided May 31, 1989.

---

Richard Seligman, Washington, D.C., was on the brief for appellant Garris.

Steven R. Kiersh, Washington, D.C., was on the brief for appellant Walker.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Mary Ellen Abrecht, Thomas J. Motley, Washington, D.C., and Oliver W. McDaniel, Asst. U.S. Attys., were on the brief for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

These appeals from appellants' convictions by a jury of armed robbery, D.C.Code §§ 22–2901 (1981), 22–3202 (1988 Supp.), and appellant Garris' conviction of assault with intent to commit armed robbery, *id.*, §§ 22–501 (1981), 22–3202, challenge the

trial judge's denial of appellants' pretrial motions to suppress identification testimony, Walker's motion to suppress his written statement to the police, and Garris' motion for a severance under Super.Ct.Crim.R. 14.[1] We hold that (1) the show-up identification held twenty-four hours after the first robbery was permissible because it took place right after two men, fairly described as appellants, attempted to rob the same place the following day; (2) notwithstanding an answer in Walker's statement indicating it was not given voluntarily, the evidence supports the trial judge's finding of voluntariness given the totality of circumstances; and (3) the trial judge did not err in finding that a severance was not required even though there was a measure of irreconcilability between Garris' defense of misidentification and Walker's defense of innocent presence, and given that the misuse of Walker's redacted statement was harmless. Accordingly, we affirm.

## I

The government presented evidence that on December 23, 1985, at 11 a.m., appellants entered the Chevron Inn and approached James Bradley, the assistant manager, who was sitting at the front desk. Both men attempted to take pistols from their pockets; Garris' gun dropped on the counter. Appellants demanded money and took approximately $330 from Bradley. Judy Mabilog, a secretary to the general manager, was walking out of the lobby when the two men entered, and she observed some of their actions from outside the Inn. Twenty-four hours later, on December 24, 1985, Garris and another man who fit Walker's description returned to the Chevron Inn, and Garris pointed a gun at Bradley and demanded money. When Vina Tavedikul, a gift-shop worker, entered the lobby, the two men fled without taking any money. Forty-five minutes later, Garris was brought back to the Inn where Bradley identified him as one of the men involved in the two incidents. Fifteen to twenty minutes after that, Walker was

brought back to the Inn and Bradley identified him as the second man involved in the December 23rd incident. Bradley was uncertain whether Walker also was involved in the December 24th incident since Bradley had not seen the second man's face and Walker's clothes were different from those which the second man was wearing.

Walker testified that Garris drove him and another man named Earl to the Inn on both days in a car owned by Garris' mother, but claimed that he had been told to stay in the car while the others went into the Inn, and, consequently, he had no knowledge of any criminal activity on either day. Walker explained that on December 24th he fled with Garris because he was afraid and did not know what had happened. Garris did not testify, but presented evidence through his mother that he did not have keys to her car. He also called Officer Sullivan who testified that on December 24th he advised James Bradley that the police were bringing a subject back to the Inn. Officer Sullivan told Bradley that he wanted him to try to identify the subject as the man who had attempted to rob the Inn earlier.

## II

Appellants challenge the trial judge's denial of their pretrial motions to suppress identification evidence. They contend that Bradley's identification of them was impermissibly suggestive and unreliable because of the more than twenty-four hour delay between the first offense and the show-up identification; Officer Sullivan's statement to Bradley before bringing appellants back to the Inn for identification; the short time Bradley viewed Walker on December 23rd and Garris on December 23rd and 24th; and other shortcomings in Bradley's identification, such as his focus on appellants' clothing as opposed to their facial characteristics. Garris also relies on the suggestive manner in which he was presented, in handcuffs, to Bradley for identification.

---

**1.** *Walker* also challenges the sufficiency of the evidence against him of armed robbery. See note 4, *infra*.

The trial judge found that Bradley's identification of Walker with respect to the attempted robbery on December 24th was unreliable because Bradley admitted that Walker was dressed differently from the man who was with Garris in the lobby of the Inn that day, and granted Walker's motion for judgment of acquittal of assault while armed with intent to rob. Regarding the robbery on December 23rd, the judge found that the time between the confrontation and the show-up was unusually long, but that the delay was understandable since the officers were responding to the second incident at the Inn. The judge also found that Officer Sullivan's words in soliciting Bradley's identification were only somewhat more suggestive than usual, and that Bradley's overall identification was reliable. The trial judge thought that the reliability of Bradley's identification of Walker as the perpetrator of the crime on the 23rd was enhanced by his admission that he could not say whether Walker was involved in the attempted robbery on the 24th. The judge also concluded that Bradley's identification of Garris as the man involved on both days was not unduly suggestive and was reliable.

▮ This court stated in *Jones v. United States*, 277 A.2d 95, 98 (D.C.1971), that "it is impossible to fix any precise time limit measured by a specific number of minutes from the commission of the crime within which all on-the-scene confrontations must take place." Although at some point the nexus of time and place between the offense and the identification will become too attenuated to outweigh the risk of irreparable misidentification, *McRae v. United States*, 137 U.S.App.D.C. 80, 87, 420 F.2d 1283, 1290 (1969), this does not mean that show-ups cannot be conducted upon a second-sighting which occurs after the original confrontation. *See, e.g., United States v. Evans*, 141 U.S.App.D.C. 321, 438 F.2d 162, *cert. denied*, 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 432 (1971) (upholding show-up held thirteen days after burglary as "chance event," where victim

recognized offender on the street). Relying on *Evans*, this court in *Jackson v. United States*, 354 A.2d 869, 872 (D.C. 1976), upheld a show-up where the victim of a burglary and armed robbery had a chance encounter with the offender on the street three weeks after the crime. The court was influenced by the fact that the arresting officers were responding to an emergency situation, the person arrested was taken to the complainant within minutes, and the victim had had ample opportunity to view the person during the crime. Similar circumstances are present in the instant case, and, consequently, we reject appellants' argument that the police should have conducted a line-up identification because of the amount of time that had passed. The police had the responsibility to ascertain quickly and reliably whether the men they had arrested on December 24th were the perpetrators of the crime that occurred that day. Although the police knew that the arrested men might also be the same men involved in the incident on the 23rd, this knowledge did not taint the show-up since the police apprehended the men in response to the offense on the 24th, and the subsequent identification was a chance event.

▮ The appearance of being in custody also does not necessarily render a show-up so suggestive as to give rise to a substantial likelihood of misidentification, *Singletary v. United States*, 383 A.2d 1064, 1069 (D.C.1978); *see also Lyons v. United States*, 514 A.2d 423, 431 (D.C.1986); *Fields v. United States*, 484 A.2d 570, 575 n. 4 (D.C.1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2144, 85 L.Ed.2d 501 (1985); *Jones, supra*, 277 A.2d at 97, particularly where the identification takes place at the scene of the crime within a short period of time after the incident. *See Lyons, supra*, 514 A.2d at 426, 431; *United States v. Lee*, 158 U.S.App.D.C. 296, 485 F.2d 1075 (1973). In any event, the trial judge's finding that Bradley's identification was reliable in light of the totality of circumstances is supported by the record.[2] Bradley had suffi-

---

**2.** *See Stewart v. United States*, 490 A.2d 619, 623 (D.C.1985). In evaluating the admissibility of

identification evidence, we engage in a two-part inquiry: was the identification procedure un-

cient opportunity to observe appellants' faces, physical characteristics and dress.[3] The lighting conditions both during the crime and during the identification, which took place shortly after the incident on the 24th, were more than adequate. Bradley's descriptions were accurate, and he exhibited a high degree of certainty in identifying both men, notwithstanding the fact that he did not specifically describe their facial characteristics. *See Nichols v. United States*, 343 A.2d 336, 344 (D.C.1975).

### III

■ Appellant Walker contends that his statement to the police was not voluntarily made and that, consequently, the trial judge erred in denying his pretrial suppression motion. Alternatively, he contends that the trial judge made insufficient findings on the issue of voluntariness.

■ An allegedly coerced confession is inadmissible for any purpose unless the trial court determines, by a preponderance of the evidence, that it was given freely and voluntarily. *Wells v. United States*, 407 A.2d 1081, 1089 (D.C.1979). Whether a defendant's confession was voluntary turns upon the trial judge's appraisal of the totality of the circumstances, and a finding of voluntariness will not be overturned on appeal unless it was made without substantial support in the evidence. *Staton v. United States*, 466 A.2d 1245, 1252–53 (D.C.1983). The trial court's conclusion that the confession is in fact voluntary must be reliable and clear-cut and must appear from the record with unmistakable clarity. *Id.* at

1253 (quoting *Wells, supra,* 407 A.2d at 1089).

Officer Wyzgowski testified that he took Walker's statement after advising Walker of his rights and after Walker stated that he would answer questions without having a lawyer present. Walker was handcuffed and, according to Wyzgowski, appeared concerned about the procedures, but was otherwise calm, did not seem to be on any medication or under the influence of drugs or alcohol, and answered questions coherently. Walker points out, however, that the statement contained the answer "Yes" in response to the question, "Did anyone force you in any way to make this statement?". Wyzgowski testified that he mistakenly typed this answer, but did not recall Walker giving that answer or anyone forcing Walker to make the statement. On cross-examination, Wyzgowski conceded that he reviewed the statement for accuracy and crossed out and initialed several mistakes that appeared in the statement, but did not cross out or initial Walker's response to the question concerning coercion. He explained, however, that if Walker had actually answered yes, then he would have asked Walker additional questions to clarify the matter. Officer Mitchell, who spoke with Walker before Officer Wyzgowski, testified that Walker told him that he was willing to give a statement. Walker presented no evidence on this issue.

■ The trial judge found the "yes" response troubling, but concluded that, on the basis of the totality of the circumstances, the government met its burden of demonstrating that the statement was volun-

---

necessarily suggestive and conducive to irreparable misidentification and, if so, was the resulting identification, nevertheless, reliable given the totality of the circumstances. *Id.* at 622; *see also Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors to be considered in assessing reliability are: 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the *witness* at the confrontation, and 5) the length of time between the crime and the confrontation. *Manson v. Brathwaite, supra,* 432 U.S. at

114, 97 S.Ct. at 2253; *Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. at 382; *Stewart, supra,* 490 A.2d at 623.

**3.** Garris and Walker came within two or three feet of Bradley on December 23rd. Although there is some discrepancy as to the exact amount of time it took them to reach the counter, there was an additional period of time when Garris fumbled with his gun before Bradley focused his attention on the guns. Moreover, business was slow so Bradley was able to focus his attention on appellants. Bradley also had a second chance to view Garris on December 24th.

tary. This finding appears in the record with "unmistakable clarity," *Staton, supra,* 466 A.2d at 1253, and is supported by evidence in the record. Walker's claim that the typewritten answer "yes" on the statement is uncontroverted evidence that the statement was not voluntary fails to take into account the judge's finding that Wyzgowski gave a credible explanation for that answer. The judge could find it reasonable to expect that Wyzgowski would have asked additional questions had Walker actually stated that he was not answering voluntarily. Moreover, Walker concedes that the record is silent as to the nature of the coercion. Thus, Walker's challenge to the voluntariness of the statement and the sufficiency of the judge's findings is meritless.[4]

## IV

Finally, Garris contends that the trial judge erred in denying his motion for a severance pursuant to Super.Ct.Crim.R. 14[5] in view of the defendants' conflicting and irreconcilable defenses and the government's use of Walker's out-of-court statement to impeach Walker which, Garris claims, impermissibly implicated him.[6] We find no abuse of discretion. *Tillman v. United States,* 519 A.2d 166, 169 (D.C. 1986) (citing *Ready, supra,* 445 A.2d at 986; *Sweet v. United States,* 438 A.2d 447, 450 (D.C.1981); and *Johnson v. United States,* 398 A.2d 354 (D.C.1979)).

### A.

To obtain a severance on the ground of irreconcilable defenses, a defendant must demonstrate a "clear and substantial contradiction between the respective defenses," causing inherent irreconcilability between them, *Tillman, supra,* 519 A.2d at 170 (citing *Williams v. United States,* 382 A.2d 1, 8 (D.C.1978)), and that the irreconcilability creates a danger or risk that the jury will draw an improper conclusion from the existence of the conflicting defenses alone that both defendants are guilty.[7] *Tillman, supra,* 519 A.2d at 170. The degree of such risk depends upon the extent of evidence offered against the defendant, independent of the conflicting evidence presented by the codefendant. *Id.; Ready, supra,* 445 A.2d at 987. Therefore, upon ruling that the defenses are inherently irreconcilable, the judge must determine whether there would

---

**4.** Walker's additional assertion that there was insufficient evidence of his involvement in the December 23rd robbery because Bradley's identification of him could not be considered convincing beyond a reasonable doubt is meritless. Convictions can be sustained on the basis of the testimony of a single eyewitness, *see, e.g., In re B.E.W.,* 537 A.2d 206 (D.C.1988); *Malloy v. United States,* 483 A.2d 678, 680 (D.C.1984), and Bradley's minor inconsistencies are not fatal to his identification. *See Patterson v. United States,* 479 A.2d 335, 338 (D.C.1984). Moreover, Bradley's identification was corroborated by Judy Mabilog, Walker's flight from the scene, the pellet gun found along Walker's escape route, and Walker's own admission that he was in the area during the commission of the crimes on both days. *Crawley v. United States,* 320 A.2d 309 (D.C.1974), on which Walker relies, involved substantially different facts.

**5.** Super.Ct.Crim.R. 14 provides, in pertinent part:

> If it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together, the Court may ... grant a severance of defendants or provide whatever relief justice requires.

**6.** Garris also contends that the fact that he did not testify, while Walker did, gave rise to an

inference which was adverse to him. *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966), states unequivocally that to prevail on this claim the testifying defendant must actually urge the jury to draw an adverse inference from his codefendant's silence. *See also Ready v. United States,* 445 A.2d 982, 988 n. 12 (D.C.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983). Garris does not allege, nor does the record suggest, that this occurred.

**7.** As this court pointed out in *Ready, supra,* 445 A.2d at 986 (footnote omitted):

> [J]oint trials almost inevitably will reveal some differences among codefendants' presentations; and, as a general proposition, it is for the jury, not the court, to judge credibility and sort ,out most of these conflicts. The problem ... is not the prejudice attributable merely to conflicting testimony. It is, rather, the potential for prejudice from joinder when the defenses themselves are inherently irreconcilable. When that happens at least one defendant assuredly is lying and, for that reason, there is a danger that the jury will believe both are lying.

be available at trial enough independent evidence of a defendant's guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the judge reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find the defendant guilty. *Tillman, supra,* 519 A.2d at 171 (citing *Ready, supra,* 445 A.2d at 987).

■ It is well established that when a defendant claiming innocent presence, such as Walker, implicates a codefendant presenting an alibi defense, the two defenses may be irreconcilable. *See Ready, supra,* 445 A.2d at 987; *Sweet, supra,* 438 A.2d at 450–51; *Ellis v. United States,* 395 A.2d 404, 409 (D.C.1978), *cert. denied,* 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979). The government maintains, however, that Garris does not claim he was elsewhere, only that he was misidentified, and that this defense alone, without a showing that he was elsewhere, does not make the defenses irreconcilable. The trial judge found a "measure of irreconcilability" between the defenses in this case, and we agree. As the judge noted, the degree of irreconcilability in the defenses would have been greater had Garris "take[n] the witness stand and sa[id] that he was in Iowa," but there still is irreconcilability when one defendant places a codefendant at the scene of the crime and the codefendant contends, as Garris did, that he was misidentified.[8] Implicit in the claim of misidentification is the assertion that the codefendant was elsewhere, or if present at the scene for some reason, that he was not the perpetrator of the crime. Since either of these two explanations is possible, and Garris chose not to testify to explain which assertion was correct, the judge did not abuse his discretion in finding some irrec-

oncilability between the two defenses in this case.[9]

■ Nor did the judge err in finding that this measure of irreconcilability, alone, did not sway the jury to find Garris guilty. *Tillman, supra,* 519 A.2d at 170. Bradley's positive identification of Garris as the perpetrator of the December 23rd and 24th crimes, the corroborating testimony of Judy Mabilog and Vina Tavedikul, Garris' flight on December 24th, and the discovery of keys fitting the ignition of a car owned by Garris' mother supplied independent evidence of Garris' guilt beyond that necessary to survive a motion for judgment of acquittal. *See Tillman, supra,* 519 A.2d at 171. The testimony of even a single eyewitness could be sufficient to meet this burden. *See id.* at 171–72; *Ellis, supra,* 395 A.2d at 409.[10]

### B.

Garris further contends that the government used Walker's out-of-court statement in violation of *Carpenter v. United States,* 430 A.2d 496 (D.C.) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). Under *Carpenter,* a severance should be granted unless the statement is excluded or redacted to avoid any incriminating hearsay references to the codefendant. *Id.* at 504; *accord West, supra,* 499 A.2d at 868. "[T]he redaction must effectively eliminate from the out-of-court statement all references to the nondeclarant codefendant. This includes references which, when placed in conjunction with the redacted statement, make it clear the deleted portions or names refer to the codefendant." *Carpenter, supra,* 430 A.2d at 505 n. 15 (citations omitted); *see also Foster v. United States,* 548 A.2d 1370, 1378 (D.C. 1988).

---

**8.** Garris' claim that he also presented an alibi defense is unsupported by the record.

**9.** The government's reliance on *Ready, supra,* for the proposition that a defendant claiming misidentification has the burden of proving he was elsewhere in order to assert irreconcilability is misplaced. *Ready* only addresses the situation of a codefendant who admittedly claims he was elsewhere, as opposed to one claiming mis-

identification without further explanation. 445 A.2d at 987.

**10.** Garris' additional contention that there was a disparity in the evidence against him as compared to Waker does not entitle him to a severance since the evidence against him was far more than *de minimis.* *See West v. United States,* 499 A.2d 860, 868–69 (D.C.1985).

The government made three references to Walker's out-of-court statement during its cross-examination of Walker. The first two references were redacted to exclude any mention of Garris and only mentioned Earl, the person Walker claimed accompanied Garris and Walker to the Inn on both days. The third reference was to an omission in the statement.

■ Garris contends that the redactions in the first two references were unsuccessful because by the time the statement was used the government had already implied that Earl was a figment of Walker's imagination, that is, an attempt by Walker to place the blame on a nonexistent suspect, and therefore the jury would necessarily infer that all references to Earl were actually references to Garris.[11] We do not agree that the jury would "likely discern" such impermissible inferences to Garris from the redacted statement. *See West, supra,* 499 A.2d at 868. Garris was not mentioned in either of the first two references, and the government's impeachment of Walker about Earl was not so effective that the mention of him in the statement necessarily implicated Garris.[12]

■ The final reference, however, was prejudicial. The government's question implied that Walker told the police that Garris had given him money after the alleged robbery on December 23rd, and thus directly implicated Garris in the robbery. The use of an out-of-court statement in this way to highlight an omission circumvents the proscription in *Carpenter* against admitting evidence incriminating to a codefendant through a defendant's out-of-court statement. Indeed, it is fraught with dan-

ger since the government can continuously invoke the codefendant's name by reference to an "omission" in the statement. Although Garris did not object to this particular question, he periodically renewed his motion for a severance and objected to hearsay evidence implicating Garris. Nevertheless, we hold that the error was harmless in light of the independent evidence of Garris' guilt and the trial judge's instructions regarding the limited use of impeachment testimony, the defendant's right not to testify at trial, and the jury's duty to evaluate separately the evidence against each defendant. *See Brabham v. United States,* 326 A.2d 254, 256 (D.C. 1974), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975).[13] Accordingly, the judgments of conviction are affirmed.

*Affirmed.*

---

**11.** It is permissible to analyze the effect of the redaction in conjunction with other evidence presented at the trial. *See West, supra,* 499 A.2d at 868 (use of neutral terms in redacted statement effective because of what prior evidence had established); *Jones v. United States,* 119 U.S.App.D.C. 284, 287, 342 F.2d 863, 866 (1964) (other testimony may make it impossible for a redaction to divert incrimination from the confessor's codefendant to "an anonymous nobody").

**12.** The fact that the trial judge granted Walker's motion for judgment of acquittal of assault with

intent to commit robbery on December 24th, and did not allow Bradley to identify Walker as the second man in that incident, actually bolstered Walker's testimony that a third person was involved in the crimes.

**13.** We also disagree with Garris that reversal of his convictions is required due to the cumulative effect of his claims of prejudice arising from the denial of his severance motion since we have not found any of his claims particularly meritorious.